Exhibit B-1

Exhibit B-2

Plaintiff Disciplinary Report

7. Day's Punitive Segregation

| Sunday | monday | Tuesday | wednsday | Thursday | friday | saTurday |
|--------|--------|---------|----------|----------|--------|----------|
| 04-28-02 | 04-29-02 | 04-30-02 | 05-1-02 | 05-2-02 | 05-3-02 | 05-4-02 |
| ① | ② | ③ | ④ | ⑤ | ⑥ | ⑦ |

James McKinnon

Exhibit "Q" James McKinnon

# Disciplinary Report - Page 1
## Connecticut Department of Correction

CN 9503
1-10-94

215

| Unit GULF | Report date 04/28/02 | Report no. 9204121 |
|---|---|---|
| Inmate name MC KINNION | I.D. no. 100770 | Housing G104 |
| Location G BLOCK DAY ROOM | Incident Date 04/28/02 | Time 825 ☐ a.m. ☑ p.m. |
| Charge FIGHTING - ASSAULT @ 4.30.02 | | Class A |

**Description of violation:** ON THE ABOVE DATE AND TIME INMATE MCKINNION #100770 WAS OBSERVED BY THIS OFFICER, FIGHTING WITH INMATE ASHLINE #138627 IN G BLOCK DAY ROOM.

**Witness(es):**

**Physical evidence:**

| Reporting employee Jaff | Employee requests copy ☐ yes ☐ no | |
|---|---|---|
| Title C/O | Date 04/28/02 | Time 905 ☐ a.m. ☑ p.m. |

## CUSTODY SUPERVISOR / UNIT MANAGER REVIEW

| ☒ Administrative detention | Date 4/28/02 | Time 8³⁰ ☐ a.m. ☒ p.m. |
|---|---|---|
| ☐ Interview accused | ☐ Informal Disposition | |
| Custody supervisor / unit manager signature _____ | | |
| Title Lt. | Date 4/28/02 | Time 11¹⁵ ☐ a.m. ☒ p.m. |

## INMATE NOTICE

| Delivered by T. Micci | (28) | |
|---|---|---|
| Title C/O | Date 4/28/02 | Time 11³⁰ ☐ a.m. ☑ p.m. |

Exhibit T-B-2/form

# Disciplinary Process Summary Report – Page 1
## Connecticut Department of Correction

CN 9504
1-10-94

| Unit **Garner C.I.** | Report no. **0204121** | Report date **4-28-02** | Hearing date **N/A** |
|---|---|---|---|

| Inmate name | **McKINNON** | I.D. no. **100770** | Housing | **G-104** |
|---|---|---|---|---|

| Reporting employee | **JAFFER** | Title | **C/O** |
|---|---|---|---|

| Investigator | **Morales** | Advocate | **N/A** |
|---|---|---|---|

| Inmate appearance | ☐ yes | ☒ no | Reason **Pled guilty to Investigator** |
|---|---|---|---|

| ☐ | Suspended sentence | | |
|---|---|---|---|
| ☐ | Deferred prosecution | No. of days | Through |
| ☐ | Charge dismissed | By | Reason |

Continuances (dates and reasons):

## SUMMARY

| | Charge / Class | Plea | Finding | Sanction |
|---|---|---|---|---|
| Original | **FIGHTING/A** | | | 7 P/S THRU 5-04-02 |
| | | | | 15 LOR THRU 5-19-02 @ 5-2-02  LOR 6-29-02 |
| Substitute | **ASSAULT/A** | **Guilty** | **Guilty** | 30 LOP THRU 6-03-02 @ 5-2-02  LOP 7-14-02 |

| ☐ Confidential information | Reliability |
|---|---|

Documentation submitted

☐ Incident Report          ☐ Medical Incident Report

☐ Use of Force Report      ☐ Other (specify)

| Witness Name: | ☐ Appearance |
|---|---|

Testimony:

| Witness Name: | ☐ Appearance |
|---|---|

Testimony:

| Witness Name: | ☐ Appearance |
|---|---|

Testimony:

| ☐ Witness Exclusion | Name | Reason |
|---|---|---|

Physical evidence, written testimony:

29

Exhibit  C-3
Exhibit  D-4 -Housing uniT
PlainTiff  Disciplinary  RePorT

10. Day's  PuniTive  SegregaTion

| | | | | | | |
|---|---|---|---|---|---|---|
| 05-5-02 | 05-6-02 | 05-7-02 | 05-8-02 | 05-9-02 | 05-10-02 | 05-11-02 |
| 05-12-02 | 05-13-02 | 05-14-02 | | | | |

InsulT  Lang

James McKinnon
James McKinnon

30

# Disciplinary Process Summary Report – Page 1
## Connecticut Department of Correction



CN 9504
1-10-94

| Unit **Garner C.I.** | Report no. **0204053** | Report date **04-08-02** | Hearing date 5/1/02 |
|---|---|---|---|

| Inmate name **McKINNON** | I.D. no. **100770** | Housing **G-BLOCK** |
|---|---|---|

| Reporting employee **CUDA** | Title **RN** |
|---|---|

| Investigator **REILLY/MORALES** | Advocate **BOUFFARD** / PANEL |
|---|---|

| Inmate appearance ☒ yes ☐ no | Reason |
|---|---|

☐ Suspended sentence   N/A

☐ Deferred prosecution   No. of days N/A   Through —

☐ Charge dismissed   By N/A   Reason —

Continuances (dates and reasons):
**CONTINUED FOR INVESTIGATION 04-18-02 THRU 05-01-02** ER

## SUMMARY

| | Charge / Class | Plea | Finding | Sanctions | |
|---|---|---|---|---|---|
| Original | **Insult Lang/B** | NG | G | 10 PIS | 5-14-02 |
| Substitute | — | — | | 30 LOM | 6-01-02 |
| | | | | 30 CTQ | 6-014-02 |

☐ Confidential information | Reliability N/A

Documentation submitted
☐ Incident Report      ☐ Medical Incident Report
☐ Use of Force Report      ☐ Other (specify)

Witness Name: Warden Gomez     ☐ Appearance —

Testimony:   ( WRITTEN ATTACHED)

Witness Name: _____     ☐ Appearance —

Testimony:

Witness Name: _____     ☐ Appearance —

Testimony:

☐ Witness Exclusion   Name   Reason

Physical evidence, written testimony:
CN 9503, CN 9503 ( SUPPLEMENTAL STAFF WITNESSES)

Exhibit D-4 James McKinnon



# RESTRICTIVE HOUSING UNIT STATUS ORDER
## Connecticut Department of Correction

CN 9401
Attachment C, Page 1
5-3-94

Facility:  Garner C.I.

| Inmate Name:  McKinnon, James | Inmate Number:  100770 |
|---|---|

## Section 1: Status

### Placement In Restrictive Housing Unit. (Check and Date the Appropriate Descriptions)

| ☐ Transfer Detention | Date: | ☐ Administrative Segregation | Date: |
|---|---|---|---|
| ☒ Administrative Detention | Date: 4/28/02 | ☒ Punitive Segregation | Date: 4/30/02 |
| ☐ Administrative Segregation Transition | | Date: | |

## Section 2 : Reason For Placement

The Inmate's / my continued presence in the general population poses a serious threat to life, property, self, other inmates, and / or the security of the institution because:

*Assault (per Reilly)*

The above inmate was placed on A.D. pending disposition of a Disciplinary Report for fighting.  Inamte

McKinnon was involved in a verbal and physical confrontation with inmate Ashline 138627 in G unit.

4/30/02 - inmate plead guilty and received 7 days of P/S time thru 5/4/02

5/1/02 - an additional 10 days of P/S time added for Insulting Language thru 5/14/02

| Signature of Supervisor:  L. Morris | | Date: 28 April, 2002 |
|---|---|---|
| Inmate given copy of this form:  Yes | Time: 11:00   ☐ a.m.  ☒ p.m. | Date: 4/28/02 |

Exhibit E-5

Exhibit E-6

Exhibit E-7

Exhibit E-8

Exhibit E-9

Exhibit E-10

Plaintiff Disciplinary Report
10. Day's Punitive Segregation

ConTraband Charge Incident
Date 4-29-02   Report no. 0204128

James McKinn
James McKinnon

| | | | 05-15-02 | 05-16-02 | 05-17-02 | 05-18-02 |
|---|---|---|---|---|---|---|
| 05-19-02 | 05-20-02 | 05-21-02 | 05-22-02 | 05-23-02 | 05-24-02 | |
| | | | ㉝ | | | |

EXHIBIT E-0-    James Mckin

# Disciplinary Report - Page 1
## Connecticut Department of Correction

CN 9503
1-10-94

| Unit  GARNER C.I. | Report date 4/29/02 | Report no. 020428 |
|---|---|---|
| Inmate name MCKINNON, JAMES | I.D. no. 100770 | Housing F-215   RH |
| Location PROPERTY ROOM | Incident Date 4/29/02 | Time 5:00 ☐ a.m. ☒ p.m. |
| Charge  CONTRABAND | | Class  B |

**Description of violation:**  ON RHE ABOVE DATE AND TIME WHILE CHECKING I/M MCKINNON #100770 PROPERTY FOR CONTRABAND PER. LT. TRAVAGLIN. THIS WRITER FOUND 17 BALLS OF COFFEE WRAPED IN PLASTIC. I/M THAT ARE HOUSED IN GULF UNIT ARE NOT ALLOWED TO POSSESS COFFEE. I/M MCKINNON WAS HOUSED IN GULF UNIT BEFORE HIS PLACEMENT INTO RESTRIVE HOUSING.

**Witness(es):**

**Physical evidence:**  (17) BALLS OF COFFEE IN PLASTIC

| Reporting employee M. TIERNEY | | Employee requests copy ☒ yes ☐ no | |
|---|---|---|---|
| Title  CORRECTION OFFICER | Date 4/29/02 | Time 5:15 ☐ a.m. ☒ p.m. | |

## CUSTODY SUPERVISOR / UNIT MANAGER REVIEW

| ☐ Administrative detention | Date | Time ☐ a.m. ☐ p.m. |
|---|---|---|
| ☐ Interview accused | ☐ Informal Disposition | |
| Custody supervisor / unit manager signature | | |
| Title | Date 6/29/02 | Time 5³⁰ ☐ a.m. ☒ p.m. |

## INMATE NOTICE

Delivered by  KAVANAUGH

| Title  C/O | Date 4-29-02 | Time 540 ☐ a.m. ☒ p.m. |
|---|---|---|

34

# Disciplinary Process Summary Report – Page 1
## Connecticut Department of Correction

CN 9504
1-10-94

| Unit **Garner C.I.** | Report no. **0204128** | Report date **4-29-02** | Hearing date 5/28/02 |
|---|---|---|---|
| Inmate name **McKINNON** | | I.D. no. **100770** | Housing **F-215** |
| Reporting employee **TIERNEY** | | Title **C/O** | |
| Investigator **MORALES** | | Advocate **C/C CARRIGAN** | |
| Inmate appearance ☒ yes ☐ no | | Reason | |

| ☐ | Suspended sentence | | |
|---|---|---|---|
| ☐ | Deferred prosecution | No. of days ___ | Through ___ |
| ☐ | Charge dismissed | By ___ | Reason ___ |

Continuances (dates and reasons): CONTINUED 5.9.02 TO 5.22.02 WITNESS
CONTINUE 5.23.02 TO 6.5.02 ADVOCATE

## SUMMARY

| | Charge / Class | Plea | Finding | Sanctions |
|---|---|---|---|---|
| Original | **Contraband/B** | NG | G | 10 PLS   90 LOC |
| Substitute | ___ | ___ | ___ | 30 CTQ |

| ☐ Confidential information | Reliability ___ |
|---|---|

| Documentation submitted | ☐ Incident Report | ☐ Medical Incident Report |
|---|---|---|
| | ☐ Use of Force Report | ☐ Other (specify) |

Witness Name: M.R. CAIN (COMMISSARY)    ☐ Appearance ___

Testimony: (WRITTEN ATTACHED)

Witness Name: ___    ☐ Appearance ___

Testimony: ___

Witness Name: ___    ☐ Appearance ___

Testimony: ___

☐ Witness Exclusion   Name ___   Reason ___

Physical evidence, written testimony:
CN9503, CN9505

35

ExhibiT "E-7" _Jamie McKinney_



## Disciplinary Process Summary Report – Page 2
### Connecticut Department of Correction

CN 9504
1-10-94

**Basis for finding:**

The staff member reports that coffee was confiscated from the inmate. The coffee was not contained in its original container. The inmate admits to these facts.

— Guilty —

**Basis for sanctions:**
① A.D. 9.5
② Nature of Offence
③ facility recommendation

## DISPOSING OFFICER

| | |
|---|---|
| Hearing officer signature  Lt. Edward Hammer | Date 5/28/02 |
| Disciplinary coordinator signature | Date |
| Investigator signature | Date |

## INMATE NOTICE

You may appeal a finding of guilty by a hearing officer within 15 days

| | |
|---|---|
| Delivering officer signature | Date 5/29/02 |

Copies (5): investigator, reporting employee, inmate, disciplinary file, and inmate master file

36



# RESTRICTIVE HOUSING UNIT STATUS ORDER

## Connecticut Department of Correction

CN 9401
Attachment C, Page 1
5-3-94

---

Facility:  Garner Correctional Institution

Inmate Name:   Francis McKinnon          Inmate Number:   100770

### Section 1: Status

Placement In Restrictive Housing Unit. (Check and Date the Appropriate Descriptions)

| ☐ Transfer Detention | Date: | ☐ Administrative Segregation | Date: |
|---|---|---|---|
| ☒ Administrative Detention | Date: 5/14/02 | ☐ Punitive Segregation | Date: |
| ☐ Administrative Segregation Transition | | Date: | |

### Section 2 : Reason For Placement

The Inmate's / my continued presence in the general population poses a serious threat to life, property, self, other inmates, and / or the security of the institution because:

Inmate Francis McKinnon 100770 is placed on Administrative Detention status pending possible IMHU placement

| Signature of Supervisor:  Capt. C. Burgos | | Date: 5/14/02 |
|---|---|---|
| Inmate given copy of this form: yes | Time: 4:00 ☐ a.m. ☒ p.m. | Date: 514/02/ |

37

Exhibit E-9

**Connecticut Department of Correction**

1-12-98

| name | James McKinnon | Inmate no. | 100110 |
|---|---|---|---|
| ...ciplinary report no. | 0204128 | Report date | 4/29/02 |
| Advocate | Danielle Carignan | Offense | Contraband B |
| Date and time investigation initiated | 1030 5/8/02 | | |

## ACCUSED INMATE INTERVIEW

· I/m stated that he bought the coffee when he was in G-block. Had in his property all the time. Went from G to H to G + he had his coffee all the time- even when shaken down nobody said anything. · I/m has receipts.

With my signature I acknowledge that I have met with my advocate.

Inmate signature _James McKinnon_    Date 5/8/02

Advocate signature

38

SALES RECEIPT

Location: 136-X

10/22/2001

Name: MCKINNON, JAMES

Sales Order ID: 675550

DOC# : 0000100770

Staff ID: COM128

BEGINNING BALANCES:   Available Balance is   287.63   Spending Limit Balance is   50.00

| Quantity | Description | Price |
|---|---|---|
| 1 | COLORED PENCILS * | 2.07 |
| 1 | ERASER * | 0.23 |
| 1 | MANILA ENVELOPE * | 0.12 |
| 1 | CARD POSTAGE | 0.34 |
| 1 | GET WELL CARD * | 0.75 |
| 1 | CHAPSTICK | 1.01 |
| 1 | PRO GLO POMADE * | 1.39 |
| 1 | AFRO COMB * | 0.56 |
| 1 | AFRO PICK * | 0.56 |
| 1 | PLASTIC BOWL & LID * | 0.51 |
| 1 | PLASTIC CUP & LID * | 0.40 |
| 2 | HANDKERCHIEF * | 1.44 |
| 1 | SWEATPANTS XL | 8.27 |
| 1 | SWEATSHIRT XL | 8.27 |
| 1 | BOXERS, MENS XL | 8.48 |
| 2 | PEPPERONI SLICES * | 3.18 |
| 1 | SQUEEZE CHEESE | 2.32 |
| 2 | BEEF SALAMI, 5OZ | 2.74 |
| 2 | CRUNCH N MUNCH | 2.54 |
| 1 | STARLITE MINTS * | 0.48 |
| 1 | FIREBALLS * | 0.49 |
| 1 | COFFEE | 2.14 |
| 1 | FRUIT PUNCH * | 1.58 |
| 2 | PORK RINDS * | 1.26 |

|  | SUB TOTAL | 51.13 |
|---|---|---|
|  | TOTAL TAX | 1.11 |
|  | TOTAL | 52.24 |

ENDING BALANCES:   Available Balance is   235.39   Spending Limit Balance is   22.78

800
2000

39

NUMBER: Case 3:02-cv-02306 WWE Document 145-2 LEE Filed 11/16/2005 Page 14 of 26 32
CURRENT LOCATION: GARN  CI

| DATE | SEQ | FCLTY | OFFENSE(S) | DISPOSITION(S) | AMOUNT(S) |
|---|---|---|---|---|---|
| 04 08 2002 | 01 | 136 | INSULT LANG OR BEHAV | PUNITIVE SEGREGATION | 010 DAYS |
| | | | | THRU 05/14/02 | |
| | | | | LOSS OF SOC.CORRESP. | 030 DAYS |
| | | | | THRU 06/01/02 | |
| | | | | CONFINED TO QUAR/UNT | 030 DAYS |
| | | | | THRU 06/14/02 | |
| 02 21 2002 | 01 | 136 | DISOBEY DIRECT ORDER | LOSS OF RECREATION | 015 DAYS |
| | | | | THRU 03/08/02 | |
| 12 31 2001 | 01 | 136 | DISOBEY DIRECT ORDER | LOSS OF TELEPH. PRIV | 015 DAYS |
| | | | | THRU 01/17/02 | |
| | | | | LOSS OF SOC.VST PRIV | 015 DAYS |
| | | | | THRU 01/17/02 | |

CRT5 01/28/03  CT DEPT OF CORRECTION - DISCIPLINARY HISTORY, RT67.
TRANSACTION: P/N   NUMBER: 00100770

ExhibiT F-11

Jamm Mckin

CURRENT LOCATION:  CARN.. CI

| DATE | SEQ | FCLTY | OFFENSE(S) | DISPOSITION(S) | AMOUNT(S) |
|------|-----|-------|------------|----------------|-----------|
| 04 29 2002 | 01 | 136 | CONTRABAND CLASS B | PUNITIVE SEGREGATION | 010 DAYS |
| | | | | THRU | 05/24/02 |
| | | | | CONFINED TO QUAR/UNT | 030 DAYS |
| | | | | THRU | 07/13/02 |
| | | | | LOSS OF COMM. PRIV. | 090 DAYS |
| | | | | THRU | 08/30/02 |
| 04 28 2002 | 01 | 136 | ASSAULT | PUNITIVE SEGREGATION | 007 DAYS |
| | | | | THRU | 05/04/02 |
| | | | | LOSS OF RECREATION | 015 DAYS |
| | | | | THRU | 06/29/02 |
| | | | | LOSS OF TELEPH. PRIV | 030 DAYS |
| | | | | THRU | 07/14/02 |

CRT5 01/28/03  CT DEPT OF CORRECTION - DISCIPLINARY HISTORY, RT6?.
TRANSACTION: P/N    NUMBER:  00100770

Exhibit F-12

Jann McK___

PlainTiFF Hearing daTe 05-28-02
For ConTraband Disciplinary ReporT
ThaT Time allredy STarTed on
May 15, 2002 and STop may 24, 2002
on plainTiFF disciplinary hisTory paper
(ExhibiT F-11) (ExhibiT F-12)

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | 05-29-02 |
| 05-26-02 | 05-27-02 | 05-28-02 | | | | |
| | | | | | | |

James McKinnon
James mcKinnon

42

Exhibit HH
Jam Mc...

**MENTAL HEALTH ADVISEMENT**
**FOR SPECIAL MANAGEMENT UNIT**
(Restrictive Housing)

| | |
|---|---|
| INMATE NUMBER | 100770 |
| INMATE NAME: LAST/FIRST, INITIALS | McKinnon, James |
| SEX: M / F | RACE/ETHNIC: B W H O |
| CELL AND BLOCK PRIOR TO ASSESSMENT | R1409 |

On __5/30/02, 11:41 am__ the above named inmate was:

☐ Evaluated and cleared by Mental Health to go to Special Management Unit (Restrictive Housing). No prominent Mental Health issues were noted at this time.

☐ Admitted to Acute Unit per psychiatrist order. (Complete "comments" section)

☐ Admitted to Acute Unit for further assessment and observation. (Complete "comments" section)

Comments: (shall include mental status at time of incident (ie. psychotic, delusional, hallucinating, etc. and relevant clinical findings)

Per order of Major Lahda, the above stated inmate was designated for transfer from RHU to the restrictive housing area of F-block, in order to complete the remainder of his punitive segregation time. Inmate was informed of the impending move by Capt. Delgado, CTO Migliaro and this writer. Inmate presented with stable mental status at the time of the interview.

Signature of Evaluator

Original goes to:    1. Disciplinary Investigator with Disciplinary Report.

copies go to:    1. Unit Manager
2. Deputy Warden, Operation
3. Attached to Incident Report
4. Medical Record (Mental Health Section)

44

c:\wp51\forms\revised 2/19/97\mhadvar

Please write or speak to the staff if you have questions or concerns. Usually, problems can be worked out if we work together and not against each other. However, staff will be united in this program and will not be split or divided by the inmate.

The staff selected to work on this unit are highly professional and specially chosen to help you learn new, positive ways of dealing with your anger, your feelings, problem behaviors, and impulses to hurt people or destroy property.

## INMATE ACCEPTANCE OF HANDBOOK

Again, welcome to the Intensive Mental Health Unit. Please sign and date below that you have received a copy of this handbook and have had it explained to you.

INMATE SIGNATURE: *James Lee McKinnon*

DATE: 05-15-02

WITNESS: _____

DATE: _____

# INMATE HANDBOOK FOR
## INTENSIVE MENTAL HEALTH UNIT

**EXPECTATIONS:**  Exhibit #D  James Lee McKinn[...]

You have been selected to be a part of the Intensive Mental Health Unit. The program has been designed for the treatment and management of inmates who exhibit significant mental health problems resulting in assaultive behavior toward others, or who demonstrate chronic (on-going) disciplinary problems (excessive DR's). Hopefully, you will learn from and work with the staff so that you can advance your way back into a more open unit.

The key to this program is YOU. You and you alone have a CHOICE to make: to work on correcting problem behaviors and follow treatment recommendations, or to continue your old, self-defeating patterns of behavior, go nowhere, get nothing. **You are in control of your future: responsible, non-violent behavior, obeying the rules, and following recommendations by the treatment team will allow you to succeed in this program.** Medications may be an important part of your treatment, as they can help you to think more clearly, remain calm and in control, feel more trusting of others, and help with positive motivation. Medications are something you and the staff will discuss regularly.

You may have hundreds of reasons or excuses for your past behavior and acts of violence against staff or inmates. This program is not interested in excuses, but rather teaches individuals to take responsibility for their actions. Excuses only allow a person to continue acting irresponsibility and violating the rights of others, and in the end, you get nowhere. Accepting responsibility and being in control of oneself is the answer.

Respect is the main point of this program. Respect is earned, it is not automatic. If you treat others with respect, then you will be shown respect in return. Swearing at and threatening others shows a lack of respect. Destruction of state property shows a lack of respect. Violence toward others shows a lack of respect. Not only will these behaviors prevent you from advancing through the program, but they rob you of real dignity as a man. A man who can show other's respect, regardless of whether they like the person or not, he will earn the respect of staff and his fellow inmates. When you treat people respectfully, you are showing them what kind of man you are: a man to be taken seriously, a man of intelligence, a man of strong character.

The program is simple: As you demonstrate responsible behavior you will progress through levels one, two, and three. Each level increase comes with an increase in priviledges (what you are allowed to do). Weekly reviews of your progress by the unit staff can result in additional privileges; such as commissary, property allowed (walkman, T.V.), more telephone calls, and so on. Again, the granting of these privileges depends on you; how you behave, and how you cooperate with mental health treatment.

**LEVEL ONE -** This is the beginning level of the program. You will start this level once you enter the unit. This level lasts a minimum of 60 days. READ THIS WELL - 60 days means no disciplinary reports and full cooperation with staff and your mental health treatment. Lack of cooperation or problems in either area will result in a longer stay at this level. To be upgraded from Level ONE you must not have received any

Exhibit ? D. James McFinn

**TELEPHONE -** One call per week. With good behavior, up to 3 calls per approval of IMHU Treatment Team. You will lose your telephone privileges if you receive a DR or do not cooperate with the IMHU staff members. You must make a written request for your phone call to the Unit Manager or IMHU Treatment Team.

**VISITS -** 2 non-contact visits per week. Immediate family only. You must request your visit from the IMHU Treatment Team or Unit Manager. They will arrange it for you. All visitors must be on your approved visiting list. Staff will assist you with this process. (Visiting hours are usually 9:00 a.m. – 3:00 p.m. Monday – Friday).

**SHOWERS -** 3 per week (except holidays).

**PROPERTY -** After 14 days in Level One without any problems, the IMHU Treatment Team may authorize designated items from your property to be given to you. If you receive a DR or do not cooperate with the IMHU Treatment Team your property can be removed and must be earned back through treatment compliance. Your electrical outlet will be turned on when you are granted property that requires electricity.

**COMMISSARY-** After 14 days of treatment compliance, commissary may be granted. Items will be restricted to food, writing paper, and toiletries at first. Pencils will be issued upon request by the unit CTO or Counselor. Additional items may be approved by the IMHU Treatment Team (all property given will be granted based on your behavior). Electric razors will be provided upon request. No inmate may have a razor in his property or cell. Inmates are not allowed to keep any medications in their property, or cell, even Aspirin or Tylenol.

*Exhibit "D" James Mcf___*

**MEDIA RESOURCE
CENTER**        Place your request with your Unit Counselor or CTO.

**RELIGIOUS
PROGRAM -**     Individual religious sessions will be granted based upon
                the availability of the Garner Chaplain and/or designee.

**HAIRCUTS -**  Upon request.

**CLOTHING:**   Jump suit, sneakers (no laces) or slippers. Clothing, linen
                and towels will be exchanged for fresh items once a
                week.

**MAIL:**       May send and receive mail same as general population,
                but may retain only five (5) letters in cell. You will be
                allowed two newspapers and two magazines in your cell
                at a time. Once you have finished reading them, you
                may exchange them for other copies (one-for-one). You
                are not allowed to pass your magazines or newspapers
                to anyone else, whether they are on IMHU or any other
                block. If you do so, you will lose your privilege for two
                weeks. If it happens again, three weeks. If you
                continue to pass magazines or newspapers to others,
                your privileges may be taken away indefinitely.

**PAROLE:**     You will not be recommended for parole until you
                complete the program.

## LEVEL TWO -

This level is designed to see how well you will do on a large, mental
health block (F, H, or G block). This level is a minimum of 21 days,
however, the length of time it takes you to be graduated to Level 3 will
be based on your behavior and cooperation, as well as bed availability in
the assigned mental health unit.

## LEVEL TWO PRIVILEGES:

Level Two is a transition level. This means you will spend your rec period
(Monday - Thursday, excluding holidays) on F, H, or G Block with the
other inmates housed there. You will not be in handcuffs during your rec.

*Exhibit 11 Of Jamie McKim*

Your ability to "get along" with other inmates and staff will be assessed daily. Expect to spend a minimum of 1 hour on F, H, or G Block from Monday thru Friday (excluding holidays). On days you go to F, H, or G Block, you will not have recreation with the IMHU inmates. However, you will continue to see your social worker and doctor. All other privleges will remain the same as Level One. Your progress will be reviewed weekly by the IMHU Treatment Team to determine if you are ready to proceed to the next level. Again, please remember: **if you received a DR or fail to follow your treatment program, you will be returned to Level One and have to earn your way back to Level Two.**

## LEVEL THREE:

Upon successful completion of Level Two, you will be upgraded to Level Three. This level takes place on F, H, or G block and lasts a minimum of 90 days. You will have a single cell on the block for 30 days. Your progress will be reviewed weekly, paying close attention to your participation in treatment: medication cooperation, group participation, individual therapy sessions, recreation time, obeying directions from staff, and following Unit Rules. You will be granted all privileges and freedom as other inmates on the block (e.g. recreation, jobs, visits, school, and so on).

If at any time while on F, H, or G block you receive a DR or refuse to cooperate with your treatment program (rules of unit, medication, groups, and so on), the following shall happen:

Class A  DR = Return to IMHU and LEVEL ONE for 60 days unless an appeal is granted by the Unit Manager and/or IMHU Team. If appeal is granted, you will do a minimum of 30 days on Level One. You must fulfill all requirements of Level One and shortened Level Two in order to return to F, H, or G block.

Class B DR = Return to IMHU and Level Two for 30 days, unless appeal granted for exception by the Unit Manager and/or IMHU Team. Any additional Class B DR will mean automatic return to IMHU and Level One. Inmate must stay on Level One for 30 days without any disciplinary reports and be cooperative with treatment to progress back to Levels Two (shortened) and Three.

*Exhibit* *(handwritten) James McKun*

Class C  DR = To be determined by Unit Manager.

Any refusal to follow recommended treatment (medications, programs, and so on) = return to IMHU, Level One, unless appeal granted for exception by Unit Manager and IMHU Treatment Team. Ongoing refusal to follow treatment will mean automatic return to IMHU, Level One.

After completion of Level Three the following are possibilities:

1.   You may elect to remain on a mental health unit at Garner with no further special restrictions other than the rules and regulations that apply to all inmates.

2.   You may be considered for general population at Garner or another facility.

All of this depends on you and your behavior and your cooperation!

## IMHU STAFF

| | |
|---|---|
| Unit Manager - | Captain Delgado |
| Program Director - | Dr. Bogdanoff |
| Unit Psychiatrist - | Dr. Thankappan |
| Unit Social Worker - | Mr. Mihaylo |
| Unit Counselor- | Counselor Dilworth |
| Unit CTO- | CTO Migliaro |
| Unit Primary Nurse- | Ms. Salamacha |
| Correctional Officers - | will vary |

Exhibit J015

Jam mc...

To:      Major Lahda
         Captain Delgado
         Counselor Supervisor Hunt

From:    Dr. Tod J. Bogdanoff, Supervising Psychologist 2

Date:    9/27/02

The following inmate has been cleared for transition to Level 3 of the IMHU Program:

MCKINNON, James # 100770

Signed: _____
        Dr. Tod J. Bogdanoff
        Supervising Psychologist 2

Signed: _____
        Dr. Thankappan
        Principal Psychiatrist

C:       Warden Gomez
         IMHU Counselor
         IMHU CTO
         Mental Health Counselor (F,H, or G)
         Mental Health CTO (F,H, or G)
         File

51

## F. PREVIOUSLY DISMISSED ACTIONS OR APPEALS

1. If you are incarcerated and proceeding under 28 U.S.C. § 1915, please list each civil action or appeal you have brought in a court of the United States, while you were incarcerated or detained in any facility, that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Please describe each civil action or appeal. If there is more than one civil action or appeal, describe the additional civil actions or appeals using this same format on a blank sheet which you should label "F. PREVIOUSLY DISMISSED ACTIONS OR APPEALS."

If you are not incarcerated, go to section G.

a. Parties to previous lawsuit:

Plaintiff(s):_____

Defendant(s):_____

b. Name and location of court and docket number _____

c. Grounds for dismissal:  ( ) frivolous ( ) malicious ( ) failure to state a claim upon which relief may be granted.

d. Approximate date of filing lawsuit:_____

e. Approximate date of disposition: _____

2. Are you in imminent danger of serious physical injury? _____ Yes _____ No.
If your answer is "Yes," please describe the facts in detail below without citing legal authority or argument.

## G. REQUEST FOR RELIEF

I request the following relief:

PlainTiFF requesT protecTive cusTody From The defendanTs and requesT $ 75,000 ⁰⁰ in damages.

☞
S2- 6 P 53

## H. JURY DEMAND

Do you wish to have a jury trial? Yes___✓___ No_____

_____
Original signature of attorney (if any)

**Plaintiff's Original Signature**

_____

_____
Attorney's full address and telephone

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at _Corrigan Correctional 986, Norwich New London_ _June 13, 2005_
                    (location)                                                     (date)
_Uncasville Connecticut 06382_

**Plaintiff's Original Signature**

9

53 of 53